**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Washington Field Office**

131 M Street, N. E., Suite 4NW02F
Washington, D. C.  20507
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
Washington Status Line: (866) 408-8075
Washington Direct Dial: (202) 419-0713
TTY (202) 419-0702
FAX (202) 419-0740
Website: www.eeoc.gov

Habakuk Ndzerre
14200 Weeping Willow Drive
Silver Spring, MD 20906

RE:   Ndzerre v WMATA
        Charge Number 570-2013-01179

Dear    Mr. Ndzerre:

This is to explain the evidence that the U.S. Equal Employment Opportunity Commission (EEOC) has gathered in your case against WMATA (Respondent) and to inform you of the next steps you may take to pursue this matter further.

I have had the opportunity to review information provided by both parties.

In your first charge you allege, you were not promoted due to your national origin and excessive absences. You claim that the incident report you received had a forged signature of yours.

Due to the evidence obtained by the EEOC, it appears unlikely that the Respondent discriminated or retaliated against you because of your national origin.

Respondent (WMATA) claims that due to policy, promotions cannot be made due to excessive absenteeism. On August 19, 2013 you met with the union and Respondent for a Settlement Agreement where you were granted 132 hours of overtime payment and your sick leave was resolved. You had also been promoted to mechanic A position. Respondent also investigated the claim of your forged signature with the Secret Service and determined that the signature was not forged. There is no evidence to believe that any job actions have been made based on your national origin.

Once the Respondent articulates a non-discriminatory reason for its employment decision, the burden of proof rests with you to show that the stated reason is either untrue or that others, of a different class (example: race, sex, national origin), were treated more favorably under similar circumstances. This is your opportunity to provide information to rebut the Respondent's defense. If you have information which may lead to evidence to overcome Respondent's defense please contact me by February 24, 2015. I can be reached between 8:00 a.m. and 4:30 p.m., Monday through Friday at 202-419-0725, or at Sarah.Lamm@eeoc.gov. If you reach my

voicemail, please leave a message with a telephone number where you can be reached during those hours.

Since this charge of discrimination is over 180 days old you have the right to request a Right to Sue from the Commission.  This would allow you to pursue litigation without the Commission making any determination with regard to your allegations.  If you wish to request a Right to Sue, please do so in writing.

If I do not hear from you by noon on February 24, 2015, a determination will be made based on the available information without attempting a settlement on your behalf.  If your charge is dismissed, you will be issued a Notice of Right to Sue, which will allow you to file a private suit in federal court within 90 days of the Notice.

Thank you for your attention on this matter.

Sincerely,

Sarah Lamm
Federal Investigator

EEOC Form 161 (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To:   Habakuk Ndzerre
      14200 Weeping Willow Drive
      Silver Spring, MD 20906

From:   Washington Field Office
        131 M Street, N.E.
        Suite 4NW02F
        Washington, DC 20507

| ☐ | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 570-2013-01179 | Sarah Lamm, Investigator | (202) 419-0725 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐   Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒   The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

☐   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐   Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

On behalf of the Commission

FOR

Mindy E. Weinstein,
Acting Director

APR 3 0 2015

(Date Mailed)

Enclosures(s)

cc:   Jim Wynn
      Manager
      WMATA
      600 5th St Nw
      7th Floor
      Washington, DC 20001

80000 SERIES
30% P.C.W.

RECYCLED

Habakuk Ndzerre

14200 Weeping Willow Drive

Apartment 32

Silver Spring, MD 20906

Tel: 703-955-8920

Plaintiff

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## WASHINGTON FIELD OFFICE

REFERENCE: NDZERRE vs. WMATA

**Charge Number 570-2013-01179**

- OBJECTION TO WMATA's (RESPONDENT) PETITION;
- REQUEST FOR DISMISSAL OF WMATA (RESPONDENT)'S PETITION;
- WMATA's (RESPONDENT) EVIDENCE LISTED ON EEOC LETTER ARE UNTRUE;
- REQUEST OF PROOF OF MEETING ON AUGUST 19, 2013 BETWEEN THE PARTIES HABAKUK NDZERRE, WMATA AND THE LOCAL 689 UNION;
- REQUEST OF PROOF OF SETTLEMENT BETWEEN THE PARTIES

  HABAKUK NDZERRE, WMATA AND THE LOCAL 689 UNION;

- WMATA HAS ENGAGED AN UNLAWFUL EMPLOYMENT PRACTIVE;
- WMATA HAS COMMITTED AN INTENTIONAL VIOLATIONS OF

  FEDERAL LAWS ON FAMILY AND MEDICAL LEAVE ATC OF 1993;

- WMATA HAS COMMITTED AN INTENTIONAL VIOLATIONS OF

  TITLE VII OF THE CIVIL RIGHTS ACT OF 1964;

- WMATA HAS COMMITTED AN INTENTIONAL VIOLATIONS OCCUPATIONAL SAFETY AND HEALTH ACT OF 1970.Se.2 (29 U.S.C 651);
- WMATA HAS COMMITTED AN INTENTIONAL VIOLATIONS OF NATIONAL TRANSIT SYSTEM SECUIRTY ACT (NTSSA) [ 6 U.S.C. 1142]

1 - As of today, I am an employee at Washington Metro Area Transit Authority located at 600 Fifth Avenue N.W. Washington D.C. 20001 as an Automatic Train Control Mechanic A. I have nine (9) years' experience working in a conventional railroad and more than fifteen (15) years working for transit system.

2 - I, Habakuk Ndzerre, I am a U.S. citizen and, I reside in Montgomery County, Silver Spring, Maryland. Birthday March 12, 1960 in Douala, Country Cameroon located in West Africa. Because of my national origin, WMATA has failed and continue up to present not to provide my person a safe place and safe system of work.

    A - I content WMATA had engaged and has engaged in an intentional violations of unlawful employment practice as an employer; intentional violations of Federal laws on Family and Medical Leave Absence Act of 1993 also known as (FMLA), Title VII of The Civil Rights Act of 1964, Occupational Safety and Health Act of 1970. Se. 2. (29 U.S. C 651), and National Transit System Security Act (NTSSA) [6 U.S. C 1142], up to the essence of violating of WMATA's on policy, rules and regulations.

    B – Hostile work environment: usually involves supervisors, but includes anyone who has or portrays the power and authority to affect the victim's terms of employment such as: threats, firing, blocked promotion, demotion, transfer, bad performance evaluation, repeated (pervasive) actions, comments, or objects that unreasonably interfere with work performance or that create hostile or offensive work environment.

    C – Harassment: is a form of discrimination that violates Title VII of the Civil Rights Act of 1964. The victim as well as the harasser may be a woman or a man. He does not have to be opposite sex. The harasser can be the victim's supervisor, an agent of the employer, a supervisor in another area, a coworker, or non-employee. The victim does not have to be the person harassed but could be anyone affected by the offensive conduct. The harasser's conduct must be unwelcome.

    D – If there is a finding of harassment the victim is entitled to back pay, punitive damages, and payment of attorney fees.

3 - I am confident as you read this, you understand that WMATA's conduct has been deliberately and willfully intentional. To fabricate fraudulent documents as well as persecute an employee that raise these issues, are counter to WMATA's policy, States and federal regulations, as well as States and Federal Laws. Furthermore, you find WMATA's actions are extremely harmful and prejudicial to me Habakuk Ndzerre and my family, especially in this economic environment. It is not in WMATA to let neither his Directorships nor his managers actions continue as they are detrimental to its mission, and its carry liability for WMATA presently and will continue in the future.

4- I speak from the bottom of my heart when I say I have been subjected to a campaign of bullying, discrimination, criminal offenses, and retaliation. The stress and anxiety it causes. The

frustration, sleepless nights, heart palpitations and anger I feel now. I hope you understand the path in which I now tread. This complaint is written by me Habakuk Ndzerre to the Equal Employment Opportunity Commission in good faith. The prevalent reason for doing so is to make my employer remedy its transgression of Statutory Acts and Regulations.

**5 -** I have a reasonable belief that my employer has breached its duty of care to provide my person with a safe place of work. In addition, I have a reasonable belief that my employer has failed to observe its statutory duties relate to the following Acts and regulations:

  I – Family and Medical Leave Absence Act of 1993.

  II – Title VII of the Civil Rights Act of 1964.

  III – Occupational Safety and Health Act OSH Act of 1970. Se. 2 (29 U. S. C 651).

  IV – National Transit System Security Act (NTSSA) [6 U. S. C $ 1142].


**6 -** These series of acts have amounted to a breach of trust and confidence being subjected to a systematic campaign of intimidation, retaliation and discrimination. It was not a one incident; but the accumulative effects. I have little choice but to request transfer or leave. I made a transfer request and I never received any feedback which means denied. I was doing so to protect myself from a foreseeable risk of harm to my health, safety and welfare. The reason that I, Habakuk Ndzerre chose not to leave as my colleague Mr. Battista a retiree U.S. army veteran after the first and second straws, it was due to the fact that I have a family to support and the economy climate. A photocopy of the email request is enclosed herewith as "Exhibit "A."

**7 -** It was my hope at the time and place that invoking the grievance procedure, I will not be made someone in exile and subjected to any arm or detrimental treatment which would amount to not fulfilling and obligation, promise or agreement of aforementioned acts or regulations. At the time and place I trusted that my career will continue to grow more positive. Today it is not the case. I am a 100% unsafe and I am exposed to a hostile work environment.

**8 -** Here are the facts leading to the violations of the Family Medical leave Absence Act of 1993, to the refusal of promotion from grade C to B, and from B to A mechanic; retaliation; discrimination; harassment and violations of Title VII of The Civil rights Act of 1964 because WMATA's Directorships and managers tendency of mistreating and denying employees Federal benefits.

### Refusal of Family and Medical Leave Absence Act 1993

**9 - First instance.** As I, Habakuk Ndzerre have stated above that it is the accumulative effects that got me to invoke the grievance procedure about my promotion in year 2012 from B to A mechanic, it was because I had enough. On April 2, 2006, my wife gave birth to our son George

Ndjere Washington. I forwarded all necessary paperwork to the Human resources and Local 689 Union. All I received at the time and place was health insurance and, neither paperwork for (FMLA) application nor document as prescribe into (FMLA) policy none was provide to me. Eventually, this benefit was refused to me Habakuk Ndzerre. A photocopy of my son birth certificate is enclosed herewith as "Exhibit "1."

10 - "Washington Metro Area Transit Authority also known as (Metro), consistent with Federal Law, provides employees the ability to utilize the benefits associated with the Family and Medical Leave Act of 1993.

11 - On his policy/instruction 1.01". On Section 2.01 this policy/instruction "applies to all Metro employees subject to the terms and conditions of any applicable collective bargaining agreement". This policy/instruction in Section 5.01 (b) states "an eligible employee may apply for up to a total of 12 weeks of leave in a rolling year under the Family and Medical Leave Act (FMLA) for the following reasons": and Section 5.01 (b) (1) states "The birth, adoption, or replacement with the employee for foster care of a son or daughter".

12 - It includes also Section 5.01 (b) (3) "for a serious Health Condition that makes the employee unable to perform the functions of his or her job". An employee who has sick leave available cannot be denied (FMLA). This (FMLA) benefit was denied to me at the time and place, and I did not file any grievance not to have my name blacklisted at the time in place as of today it is. A photocopy of (FMLA) policy is enclosed herewith as "Exhibit "2."

13 - Second instance. I, Habakuk Ndzerre passed the written and practical tests in 2011 around April. All mechanics were promoted from C to B mechanic at the time and place was a C mechanic. I was not promoted and complaint to my immediate supervisor Mr. James Allen regarding my promotion. Please refer to statement made by Mr. James Allen in his memo to Mr. Mike Savina. Please refer to paragraph 14 "exhibit "3."

14 - Mr. Franklin Jackson's action was to hold me back no to be eligible in April 2012 for the A mechanic test. He's action succeeded, and I was not allow to go for the A test on April 2012. Photocopies of Mr. James Allen request for promotion and explanation to the previous Automatic Train Control Superintendent Mr. Mike Savina (Retiree) are enclosed herewith as "Exhibit "3".

15 - Third instance. I, Habakuk Ndzerre got ill beginning November 8, 2011, up to June 2012. (FMLA) policy/instruction Section 4.02 states that: "employees are responsible for giving timely notice of need for (FMLA) leave, for timely submitting the (FMLA) leave application and for timely submitting supporting documentation to his or her supervisor."

16 - This advance notice was giving to my immediate supervisor Mr. James Allen each instance I went out sick up to when I received my first colon and hemorrhoid surgery. In addition, after the procedure all documents were sent to my immediate supervisor, WMATA's medical department and the Human Resources. They were also updated following the second surgery.

17 - An employee who has sick leave available cannot be denied (FMLA). I was denied (FMLA) benefit at the time and place during these illnesses which brought my attendance to twenty seven days unscheduled absence. Even though Mr. James Allen stated that he received all proper paperwork he requested and, he transmitted to Human Resources. The Human Resources refusal to send me the (FMLA) application was an unlawful employment practice.

18 - Mr. O'Farrell and the Union representative during my grievance procedure were instructed by a denial from Mr. Bui Truong actual Automatic Train Control superintendent. Mr. Bui Truong insisted that Mr. O'Farrell should not recommend me for promotion. Photocopies of my medical record, Doctor's certificate and return to duty are enclosed herewith as "Exhibit "4."

19 - Mr. Bui Truong's actions are the result of I, Habakuk Ndzerre witnessed a report that was made against Mr. Bui Truong while he was a supervisor at the time and place that he did violate a safety rule that prohibited employees not to cross the yellow line sign "DO NOT CROSS" during track retrofit at D02 station.

20 - As a witness I made a statement that he was not the only supervisor or manager who did violate the policy. If he has to be suspended then Mike Brown a Track superintendent and two of his managers at the Time and place should also be suspended. Mr. Bui Truong was not suspended the fact I brought other elements of true in my testimony.

21 – Mr. Bui Truong wanted me to lie on his behalf and compromise my character and integrity. He never appreciated the fact that I confirmed his violation and, he has been holding me accountable for that up to present since he became Automatic Train Control Superintendent also known as ATC's Superintendent.

22 - The emails that I did received at the time and place from Mr. Bui Truong while he was a supervisor and his associates supervisors such as Mr. Proctor and Mr. Louis Parson harassment regarding this matter; I was about to take those emails to complaint. Mr. James Allen the senior supervisor stopped me and he requested a meeting from Mr. Louis Parson who was on duty that day to meet with me and him James Allen.

23 - During the meeting Mr. Louis Parson apologized for his actions that was unwelcome to my person. Later on Mr. Proctor also did apologize, with the exception of Mr. Bui Truong. These emails cannot be retrieved because the system had navigated to a new email program and all previous data were erased. Mr. Bui Truong's actions are unlawful employment practice and unwelcome to my person.

24 – "Under the United States laws, employers have a responsibility to provide a safe workplace. This is a short summary of key employers' responsibilities. Provide a workplace free from serious recognized hazards and comply with standards, rules and regulations issued Federal Act. Examine workplace conditions to make sure they conform to applicable standard. Not discriminate against employees who exercise their rights under the federal act". "An

employer cannot retaliate by taking (adverse actions) against workers such as: firing or laying off, blacklisting, demotion, denying overtime or promotion."

25 – "Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings, or participated in any manner in an investigation, proceeding or hearing, or to discriminate against any of this employees because he has opposed any practice made unlawful, it is unlawful employment practice" that Mr. Bui Truong has been engaged into which it is unwelcome toward my person.

26 - (FMLA) policy/instructor in Section 4.03 states that: "supervisors are responsible for recording the employee's notice of need for (FMLA) leave, for providing the (FMLA) application, and forwarding the (FMLA) leave application and/or other (FMLA) information//document as directed in the procedures.

27 - (FMLA) policy/instruction 5.12 (c) states that: "the immediate supervisor will mail the (FMLA) Application, Notice of Employee Rights, Notice of Conditional (FMLA) leave Designation and Certification of health Care Provider to any employee who calls in requesting (FMLA) leave, or who gives enough information to enable the supervisor to determine that the leave may be (FMLA) qualifying no later than two (2) business day after the request is made by employee.

28 - (FMLA) policy/instruction 5.12 (d) also states that: "when an employee gives notice of need for leave but does not request nor gives any indication that the leave is potentially (FMLA) qualifying, the immediate supervisor will mail Notice of employee Rights, Notice of conditional (FMLA) leave Designation and Certification of Health care Provider no later than four (4) calendar days after the commencement of the absence.

29 - All (FMLA) applications are to be mail certified, return receipt". A photocopy of the email sent to Mr. O'Farrell Hernando my immediate supervisor and Mr. Bala Chandran the line manager at the time and place on November 2012 to resolve this matter peacefully is enclosed herewith as "Exhibit "5."

30 - (FMLA) policy/instruction Section 5.12 (d) it was up to WMATA to provide me Habakuk Ndzerre all documents as stated into this policy after receiving all paperwork regarding my illness and the surgeries I received. WMATA's refusal was intentional violations of the Family and Medical Leave Absence Act 0f 1993.

31 - WMATA's supervisor and Human Resources omission to provide me Habakuk Ndzerre (FMLA) documentation should not have held me back for promotion from B to A. This actions was taken intentionally in purpose to hold me back as they did previously from C to B.

32 - Now that I have filed a claim at EEOC it has triggered WMATA's office of Human Resources to follow the policy by providing me Habakuk Ndzerre by certified mail all necessary documentation and, to approve my request for (FMLA) last past surgery for a Hemorrhoid that has been created by WMATA's unwelcome conduct. A photocopy of the approval notice it is enclosed herewith as "Exhibit "6."

WHEREFORE: I, Habakuk Ndzerre respectfully pray:

A – That my prayer be granted.

B – That WMATA has intentional violated the Family and Medical Leave Absence Act of 1993.

C – That WMATA's actions are retaliatory and unwelcome to my person.

D – That WMATA's actions are unlawful employment practice as an employer.

E – That an employee who has sick leave cannot be denied Family and Medical Leave Absence Act of 1993.

F - For such other and further relief EEOC may deem just and proper.

### Forgery I

### Fabricated Incident report

33– "The making, drawing, or altering a document with intent to defraud. A signature made without the person knowing of or consenting to it. Makes, completes, executes, authenticates, issues, or transfers any writing so that it purports to be an act of another who did not authorize the act or to have been at the time or place or in a numbered sequence other than was in fact the case, or to be a copy of an original when no such original existed; utters any writing which he knows to be forget".

34 – "Forgery is a crime when it includes the representation of handwriting of another and the act of uttering as true and genuine any forget writing. Forgery is a crime when it involves your signature. It is a theft of your identity. It is not to be accepted or tolerated the false making of an instrument, which purports on the face of it to be good and valid for purposes for which it was created, with design to defraud any person or persons".

35 - "Too bad he should have thought about that before he made the decision to commit a felony". These false written documents have caused I, Habakuk Ndzerre harm and damages; and most importantly the suspect did it knowingly and with a criminal intent to cause trouble by creating a falsehood.

36 - On or about October 22, 2012 at approximately 11:30 hours Automatic Train Control Mechanics also known as (ATC)'s mechanics received a call from our immediate supervisor Mr. O'Farrell Hernando. A photocopy of the synopsis from ROCC is enclosed herewith as "Exhibit "7."

**37 -** The ATC mechanics crew was composed by five mechanics listed below:

**Douty:** ATC mechanic AA. Unit number 263 (has retired)

**Conteh Fuad:** ATC mechanic H. Unit number 2333

**Habakuk:** ATC mechanic B. Unit number 2040

**Soreisa:** ATC mechanic C. Unit number 2149

**Khan:** ATC mechanic C. Unit number 2137

A photocopy of the logbook in page 122 and 123 is enclosed herewith as "Exhibit "8."

**38 –** Mr. O'Farrell Hernando's call was for report made by Rail Operation Control Center also known as (ROCC) that at Fort Totten Station Interlocking, there was (B06-02) signal red, track 1 Circuit 5ABT down solid.

**39 –** Following Mr. O'Farrell Hernando request; ATC crew reported to B06 Train Control Room at Fort Totten also known as (TCR) where all equipment are located for train activity at approximately 10:50 hours. Please refer to paragraph 36 "exhibit "7" for timeline.

**40 –** Upon arrival at B06 TCR crew took readings for transmitter and receiver for track circuit 5ABT, and recorded the transmitter and receiver level were the same as previous readings on the data book for high frequency preventive maintenance. Crew findings was problem most like on the roadway. Please refer to paragraph 37 "Exhibit "8" logbook. Mr. Douty's hand written report statement.

**41 –** I, Habakuk Ndzerre was the roadway worker in charge also known as the (RWIC). I requested permission from ROCC as per metro safety rules and procedures handbook also known as (MSRPH). Permission granted by ROCC the ATC crew proceeded to the interlocking for inspection and found switches were clamped but not properly because the clamps were not on the right location and, one switch clamp was out of the point as I, Habakuk Ndzerre reported on the air (Radio) to ROCC at approximately 13:20 hours. Please refer to paragraph 36 "Exhibit "7." for timeline.

**42 -** After reporting that the switches were not properly clamped, ROCC asked a question if a train can derail. My answer was no but you need to give a proper training about clamping and blocking to your personnel. Next question can a train derail? My answer was no. Final question from ROCC was: can I have the picture? My answer was sure you will get it from my supervisor. Please refer to paragraph 36 "Exhibit "7." for timeline.

**43 –** Upon completion of our duty, crew returned to the base at B98 Glenmont station and reported all information to Mr. O'Farrell Hernando including all pictures taking. Maximo database also update. As per WMATA's MSRPH 1.32: Employees involved in, witnessing, or informed of accident/incident, to include near misses, on the Metrorail system shall inform their supervisor, Transit police, ROCC and/or other appropriate authority as soon as possible,

and shall file a written report. A photocopy of the Maximo report is enclosed herewith as "Exhibit "9.""

**44 -** In addition MSRPH 1.36 stated that at the time of the accident/incident, names and addresses of witnesses and all other pertinent information shall be obtained and included in all accident/incidents report.

**45 –** MSRPH in his Section 3.01 states that: Accident is any unplanned or unexpected event that results in injury, and/or property damage. It may also be in his Section 3.02; 3.03; 3.04; 3.05 and 3.05.

**46 –** MSRPH in his Section 3.07 states that: Incident is an unforeseen event or occurrence, which may or may not result in injury or property damage. It may also be in his Section 3.08.

**47 -** These WMATA's MSRPH protocol was not follow neither by my immediate supervisor Mr. O'Farrell Hernando nor the ROCC Ms. Barsdale, Wanda because there was not any accident/incident any near miss as pertinent to the policy. Photocopies of WMATA's MSRPH General Rules 1.32 are enclosed herewith as "Exhibit "10.""

**48 -** On or about October 23, 2012; Mr. O'Farrell Hernando sent an email to Ms. Barsdale, Wanda and me Habakuk Ndzerre received a Carbone copy. This email was not a proper document to use for demotion. There may have been other underlying reasons that appear to be the cause of Ms. Barsdale, Wanda requested these pictures but missed to request a written incident report from each employee present at the scene as per WMATA's MSRPH general rules 1.32. A photocopy of the email used by Ms. Barsdale, Wanda as an incident report is enclosed herewith as "Exhibit "11.""

**49 –** (WMATA)'s directorships and managers were not expecting their former Rail Supervisor Ms. Mildred Wood employee's number (000505) fighting her demotion by requesting all proper documentation used for her demotion.

**50 –** "Today's Supervisor's responsibilities are ensuring compliance with company policies which are these three primary functions: Administrative – Technical – Interpersonal. In addition, Supervisor should be consistent, fair, proactive, confidential, treat people like they want to be treated. Furthermore, Supervisor has to be trustworthiness, respect, responsibility, fairness, caring and citizenship.'

**51 –** Following the Rail Supervisor Ms. Mildred Wood request of all documentations pertinent to her grievance for a wrongful demotion; on or about January 07, 2013 at approximately 08:00 hours, a Rail Manager Mr. King Orlando from Rail Transportation knocked on the (TCR) door at B98 Glenmont yard, ATC's mechanics reporting location.

**52 -** At the time and place our immediate supervisor shared the same room with us because he had just be promoted to the new position and there was no office available. Mr. King Orlando and Mr. O'Farrell Hernando went out for confidential conversation.

**53** – Thereafter, Mr. O'Farrell Hernando approached me and requested that he and I, Habakuk Ndzerre go to the train operators' training room next to the train operators' lunch room. While there, Mr. O'Farrell Hernando informed me Habakuk Ndzerre that the Rail supervisor (Ms. Mildred Wood) in connection with the October 22, 2012 (B06-02) 5ABT down solid and switches improperly clamped at Fort Totten station has been demoted.

**54** - Mr. O'Farrell Hernando request to me was that, he needed my collaboration so that he can furnish an incident report to Rail Transportation to justify Ms. Mildred Wood demotion.

**55** - Mr. O'Farrell Hernando stated to me Habakuk Ndzerre that: it was the reason of Mr. King Orlando's visit. My response was it is not my business and that, it is a violation of the WMATA's policy. Accident/Incident or near misses must be written and entered into Safety Measurement System also known as (SMS) within twenty four (24) hours of the occurrence of the accident or incident.

**56** - Fact finding data must be entered within forty eight (48) hours of the occurrence of the accident or incident. Please refer to paragraph 47 MSRPH "Exhibit "10." Section 5.18(a) page 20 incident and accident investigation.

**57** – MSRPH in his Section 1.38 GR states that: no employee shall knowingly make any false statement or falsify any official report; or knowingly enter, or cause to be entered, any inaccurate, false, or improper information on the books, reports, logs, or records of WMATA.

**58** – On or about January 10, 2013, a document (Incident report) bearing my signature came to my attention. Since I had not drafted it, written, dictated, cut, pasted, neither signed nor printed this document, the signature on the document was evidently fraudulent. A photocopy of the forged incident report is enclosed herewith as "Exhibit "12."

**59** - I was later informed that the forged document was used to justify Ms. Mildred Wood demotion. Please refer to the synopsis "Exhibit "7" for timeline, Maximo report "Exhibit "9" and the logbook "exhibit "8". The forged document has a lot of inconsistencies.

**60** – MSRPH in his Section 1.41 states that: Before presenting any claim or instituting any suit against third parties for injuries received while on duty, employees shall confer with the WMATA's Risk Management Office and shall notify the Authority, in writing within thirty (30) days of the date of filing the claim or suit. Please refer to MSRPH General Rules "Exhibit "10."

**61** – On or about January 20 and 21, 2013, I reported the fraudulent document (via email) to the General Manager (CEO), the Deputy General Manager, The Chief of Police, the Office of inspector General and the Local 689 Union President as per MSRPH states on his Section 1.41, and requested that an official investigation be opened. A photocopy of my email requesting an official investigation is enclosed herewith as "Exhibit "13."

**62** – WMATA's Respondent evidence is untrue due to the fact that accident/incident and near misses incident report should be hand written and done by the end of the shift in the presence

of the supervisor who handle the paperwork to all employees involved in, witnessing, or informed of an accident or incident. A photocopy of my hand written previous incident report is enclosed herewith as "Exhibit "14."

63 - Neither Mr. O'Farrell Hernando my immediate supervisor at the time and place nor (ROCC) Ms. Barsdale, Wanda had made a request to us ATC mechanics to write an incident report because there was no incident. Photocopies of WMATA's incident report sample are enclosed herewith as "Exhibit "15."

64 – Following my request for an official investigation, I do not recall the specific date, but it was prior to March 2, 2013. Mr. Carl B. Johnson ATC's Assistant Superintendent and Mr. Bala Chandran ATC's Manager reported to B98 yard at Glenmont for investigation. Were at the investigation meeting room: Mr. Johnson; Mr. Bala; Mr. O'Farrell and me Habakuk Ndzerre.

65 - First question addressed to me by Mr. Johnson and Mr. Bala was who drafted and signed this documents? My answer was it is not me. The same question was asked to Mr. O'Farrell Hernando who drafted and signed the document? Mr. O'Farrell Hernando answer was I did.

66 - Following Mr. O'Farrell answer, my last statement was: As you have said the true I will not file a charge against you because have already contacted the Montgomery County Commissioners' office. Mr. Johnson and Mr. Bala were embarrassed. I, Habakuk Ndzerre exited the meeting room immediately where the investigation did not last more than five minutes.

67 - WMATA's office of Inspector General special agent Mr. D'Angelo then engaged his own investigation. While this investigation was going on, Mr. D'Angelo and Assistant Superintendent Automatic Train Control Mr. Carl B. Johnson requested that I, Habakuk Ndzerre should write an incident report at the time and place to explain what happened at B06. My response was that per WMATA's accident/incident investigation it is too late to write one.

68 - Mr. D'Angelo stated to me Habakuk Ndzerre that Mr. O'Farrell said he drafted and I signed the document because I, Habakuk Ndzerre do not know how to write English. For that reason, he wanted me to work the matter with him by admitting that I did sign the document but Mr. O'Farrell drafted it, or I will be fire.

69 - Mr. D'Angelo comment was an offensive conduct and harassment. I replied that per WMATA's policy accident/incident report are hand written and within twenty four (24) hours. I did not play ball because WMATA's Office of Inspector General wanted me to compromise my character and my integrity.

70 – WMATA's Respondent Office of Inspector General's Special Agent and his colleague as investigators into the forged document should communicate a message of cooperation, instead they used intimidation such as the U. S. Secret Services stated that I was the one who drafted and signed the document. I found it an unlawful employment practice and unwelcome. At the end they did apologized and stated that I should go to EEOC.

**71 – I**, Habakuk Ndzerre knew they wanted to intimidate me such as the Special Service said it was my signature. I replied it is not and made a request that they should take it to the lab and Have a finger print investigation done. They were trying to get me to touch the document by saying take it and look at it closely; I refused to touch the forged document and said are you trying to set me up to get my finger print on that document? You will not succeed unless you hold my hand with force and tape it on. I was very offensive because I knew what they were up too. Photocopies of Mr. D'Angelo emails requesting information and meeting are enclosed herewith as "Exhibit "16."

**72 -**The forget document (Incident report) typed and bearing my signature has a lot of inconsistencies and does not reflect neither the WMATA's policy sample nor the Maximo report I made on the database on October 22, 2012 or the synopsis timeline. WMATA's (Respondent) petition is not a proper action in response to my claim, and is not the proper venue.

WHEREFORE: I, Habakuk Ndzerre respectfully pray:

G – That my prayer be granted.

H – That I, Habakuk Ndzerre am a victim of forgery.

I – That the office of Inspector General's Special Agent's actions are unlawful employment practice and unwelcome to my person.

J - That Mr. O'Farrell has intentional committed a forgery with intent to prejudice, damage, and defraud.

K – That Mr. O'Farrell Hernando has committed a forgery.

L – For such other and further relief as EEOC may deem proper.


**Forgery II**

**Fabricated Employee Assistance program Memorandum**


It is clear from the timeline of events that:

**73 –** Since the reports that I made on January 20 and 21 of 2013, I have been the subject of increased harsh and unjustified punishments and persecutions.

**74 –** Because of I, Habakuk Ndzerre national origin WMATA did not take any reasonable steps to listen to what I, Habakuk Ndzerre plaintiff have been saying about the fabricated forget document that I had reported.

75 - The actions taken against me unto and including the suspension of my salary are the results of request and report made by Mr. O'Farrell Hernando who was my direct supervisor at the time and place, and the subject of my report on the forged document bearing my signature. In addition, the forget document bearing Mr. Kimberly signature.

76 - I have not committed an act of misconduct or blatant fault that have been reported and for which I would be subject to disciplinary or remedial actions. As long as I have been employed with WMATA, I have demonstrated a commitment of doing the right thing and honesty.

77 - Unfortunately these traits that I have exhibited and will continue to exhibit daily have become a problem. I have been praised by the Authority for my commitment toward safety for fifteen (15) years of service. A photocopy of my commitment is enclosed herewith as "Exhibit "17."

78 - Relative to my job performance, I have been instrumental and a valuable asset towards ensuring the safety of employees, customers and myself as well as resolving major safety issues. I provide insurmountable documentation that confirms my commitment to WMATA.

79 - Also, that I demonstrated total disregard for WMATA safety and the Standard Operating Procedure (SOP) 500-4. As per my previous supervisor James Allen's recommendation for promotion stated: "even though I, Habakuk Ndzerre am sick, I strive to come to work." A photocopy of my certificate of achievement is enclosed herewith as "Exhibit "18."

80 - On February 7, 2013, I, Habakuk Ndzerre was informed by my colleague Mr. Vo Hung that I have to report to Mr. Le office at B35 New York Avenue Station at 09:30 hours. I was in vacation. I called Mr. Le and asked why I should report to his office while in vacation? Mr. Le stated that it was very important and that when I get there he will inform me Habakuk Ndzerre. I reported to Mr. Le office at 09:30 hours and he informed me that I have an appointment with Employee Assistance Program also known as (EAP) at 11:00 hours.

81 – I, Habakuk Ndzerre requested from Mr. Le a letter from EAP for my schedule. Mr. Le handled me a Memorandum written by O'Farrell Hernando which I found at the time in place it was not proper EAP document for appointment because I was never informed by Mr. O'Farrell Hernando prior to him leaving for vacation on February 05, 2013 and, Mr. O'Farrell Hernando knew that I will not be at work on February 7, 2013, and that I will be in vacation. A photocopy of the memorandum is enclosed herewith as "Exhibit "19."

82 - Mr. Le embarrassed, handled me the original note from EAP that Mr. O'Farrell Hernando forwarded to him dated from February 04, 2013. Mr. Le then stated that he was informed not to give me the EAP letter for my appointment.

83 - Mr. O'Farrell Hernando recommendation made to EAP about me was a set up because he knew I will not be present, and that missing an EAP appointment I will be suspended for a

minimum of six (6) months up to a one (1) year with out salary. A photocopy of EAP letter is enclosed herewith as "Exhibit "19b."

84 – Employee Assistance Program (EAP) offered by many employers, typically in conjunction with a health insurance plan, intended to help employees deal with personal problems that might adversely impact their work performance, health, and well-being. Generally include assessment, short term counseling and referral services for employees and their household members. Traditional under used in transit.

85 – Following are the issues for which EAP provides support include: substance abuse, safe working environment, emotional distress, major life events, including births, accidents, and deaths, health care, concerns, financial or legal concerns, family, personal relationship issues, work relationship issues, concerns about aging parents.

86 - In some circumstances, an employee may be advised by management to seek EAP assistance due to job performance or behavioral. In my case I, Habakuk Ndzerre, at the time and place none of these applied to my person.

87 – I, Habakuk Ndzerre was of able body and mind and qualified to continue my duties as assigned by WMATA at the time and place. I was able to submit to any physical, psychological, or fitness evaluation/assessment to demonstrate and support that fact. A photocopy of the fitness evaluation/assessment report requested by WMATA is enclosed herewith as "Exhibit "20."

88 – The fact that I, Habakuk Ndzerre was of the African origin and 53 years old at the time and place, Mr. O'Farrell Hernando would not have harassed, not discriminated, and would not have engaged retaliatory actions.


89 – On March 14, 2013; upon my return from vacation and my birthday; Mr. O'Farrell Hernando my immediate supervisor at the time and place; as a result of the Directorships and managements' conduct, in presence of Mr. Carl B. Johnson ATC's Assistant Superintendent provided me Habakuk Ndzerre an EAP's letter stating that I have been held off by EAP effective the same day for fitness evaluation/assessment as the first attempt did not work.

90 – I, Habakuk Ndzerre left work, went home and found that the EAP document was also disturbing with lots of inconsistencies bearing Ms. Kimberly Gillespie, M.SW electronic signature because GOD does not like ugly. A photocopy of the forget EAP document is enclosed herewith as "Exhibit "21."

91 – On March 18, 2013; I, Habakuk Ndzerre reported to EAP office knowing that I had a forged document from Mr. O'Farrell Hernando. I presented the document to EAP's agent and found out I was not schedule to appear there.

**92 -** The EAP's agent asked who gave me the document. My answer was my supervisor Mr. O'Farrell Hernando. I waited about one hour (1) then and EAP's agent provided me with an EAP's held off proper documentation to cover up Mr. O'Farrell Hernando's forgery. A photocopy of an EAP's document is enclosed herewith as "Exhibit "22.""

**93 -** On March 19, 2013; I sent an email to the General Manager and chief executive officer, Deputy General Manager System Maintenance, Deputy General Manager Bus to inform them that as a whistleblower following the report I made regarding the disturbing document, as a retribution and intimidation I have been held off. A photocopy of the email is enclosed herewith as "Exhibit "23.""

**94 –** On April 2, 2013 WMATA's Respondent Ms. Cooper-Lucas, Lisa EAP's Manager sent an email to the local 689 Union in response to Mr. Madaras, James former local 689 Union's President and, the actual President Jacky Jeter requested from EAP to provide an understanding of the attached EAP's "Memorandum" fabricated by Mr. O'Farrell Hernando my immediate supervisor at the time and place containing Ms. Kimberly's signature.

**95 -** The email from the WMATA's Respondent EAP's Manager Ms. Cooper-Lucas, Lisa confirmed that Kimberly did not write the memo nor sign. A photocopy of the email from Mr. James Madaras and Ms. Cooper-Lucas, Lisa correspondence is enclosed herewith as "Exhibit "24.""

**96 –** WMATA's Respondent Employees Assistant Program Manager, instead of providing me support as per the EAP's policy chose to expose me Habakuk Ndzerre for more persecution by assisting and motivating Mr. O'Farrell Hernando's arbitrary and capricious manner by providing me Habakuk Ndzerre a held off official WMATA's Respondent EAP's notice for pending fitness evaluation/assessment.

**97 -** EAP were aware of the outgoing matter by email following the meeting I, Habakuk Ndzerre Had with Ms. Smith, Dayna on February 7, 2013. After the meeting Ms. Smith, Dayna request that I forwarded the outgoing matter email about the forget document that I have sent to the General Manager for an investigation. A photocopy of the email is enclosed herewith as "Exhibit "25.""

**98 –** The fact that EAP held me off for fitness evaluation/assessment following the discovering of Mr. O'Farrell Hernando forgery on AEP's document that was neither wrote nor signed by Ms. Kimberly but bearing her signature has proved WMATA's Respondent EAP intentional violations of his forgery policy and unlawful employment practice to support and motivated Mr. O'Farrell Hernando actions towards my destruction physically and psychologically which have succeeded.

WHEREFORE: I, Habakuk Ndzerre respectfully pray:

M – That my prayer be granted.

N - That Mr. O'Farrell Hernando intentional fabricated the EAP's held off notice knowingly with a criminal intent to cause trouble by creating a falsehood.

O – That Mr. O'Farrell Hernando has committed a forgery.

P - That WMATA's Respondent EAP has intentional violated his forgery policy and engaged in an unlawful employment practice.

Q – That WMATA has caused my physical and psychological destruction.

R – That WMATA should be hold accountable for his actions.

S – For such other and further relief as EEOC may deem proper.

**Discrimination - Retaliation**

99 – Mr. O'Farrell Hernando's habitual proclivity for forgery, retaliation and harassment were the last straws in a series of events which gave cause to make a claim for constructive dismissal. The fact I did not resign to the first and second assaults meant I had affirmed the contract of employment by staying at work.

100 – I content a series of acts have cumulatively amounted to a repudiatory breach of the implied duty of the trust and confidence. It was not any one incident, but the accumulative effects. WMATA's generally entitled to take what he is told by his employee at face value. A failure to investigate my grievances adequately and promptly gave me Habakuk Ndzerre the rise of taking this claim to EEOC.

101 - Since November 2012 till present, instead WMATA should take the opportunity and adequate time to look into my complaints and remedy any potential breach; WMATA chose not too and deliberately omitted to act because of my national origin. Furthermore, WMATA omissions to act, capriciously insulted and threated my intelligence as a liar then promoted Mr. O'Farrell Hernando at a higher position for having accomplished their will.

102 – The fitness evaluations/assessment was completed By Interdynamics Inc. on March 27, 2013 and, sent over to the WMATA's Respondent EAP's Department. It was not in WMATA's intention to have me Habakuk Ndzerre re-instated following the report I made regarding those fraudulent documents.

103 – It is the fact that I, Habakuk Ndzerre had filed a claim at EEOC that triggered my immediate return to duty. I expect and hope that the Equal Employment Opportunity Commission will attend this matter with the utmost urgency and gravity that it deserves.

**104** – On January 22, 2013, following the report I Habakuk Ndzerre made on January 20 and 21, 2013 regarding the fraudulent document, I received an email from The Deputy chief of Safety Mr. Maniuszko, Robert P. I later had a meeting with him because of the safety concern he had about WMATA environment I stated in my complaint. A photocopy of the email is enclosed herewith as "Exhibit "26."

**105** – On February 28, 2013, I received an email from Mr. James Wynne Director of Office of Civil Rights and later I had a conversation on the phone with him where he promised to get back with me. He never did after recording my accent. A photocopy of the email is enclosed herewith as "Exhibit "27."

**106** - The fact that WMATA's Directorships and Managers have not allowed a thorough review of the facts in this case and have allowed more intimidation tactics to escalate to suspension of salary and more intimidation raises questions about their willingness and ability to protect the rights of employees and provide an environment of safety, security, efficacy, excellence, and open dialogue.

**107** - Based on the facts and information of this matter as described above, it is demonstrated that: I, Habakuk Ndzerre am of African origin should be a victim of discrimination, retaliatory actions and persecution. This is wrong.

**108 -** I feel I have needlessly been subjected to a systematic retaliatory campaign, due to Respondent WMATA's Directorships' omissions to take reasonable and practicable steps' and or implement any preventive or protective measures' to ensure a working environment free from retaliatory actions and harassment.

**109** - I wish to bring to the directorships attention their fiduciary duties', with express particular the fact that it is the directorship who are legally responsible to champion, promote, communicate, and implement WMATA's policies and procedures down the chain of command to their' ordinary employees. I content WMATA's Directorships have intentional violated the Occupational Safety and Health Act OSH Act of 1970. Se. 2. (29 U. S. C 651); National Transit System Security Act (NTSSA) [6 U. S. C. $ 1142] and Title VII of the Civil Rights Act of 1964.

WHEREFORE: I, Habakuk Ndzerre respectfully pray:

R – That my prayer be granted.

V – That WMATA failed to observe their statutory duties germane to   the whistleblower and retaliation act.

W – That WMATA omission to prevent further acts from being inflicted on my person.

Y – That WMATA failed to observe the United States human Rights and Equal Employment Opportunity Commission guidelines and recommendations on whistleblower and retaliation.

Z - For such other and further relief as EEOC may deem proper.

**110** – On April 10, 2013, I received an email from the EAP in reference to my return to work scheduled. A photocopy of the email from Ms. Smith, Dayna is enclosed herewith as "Exhibit "28."

**111** – On April 12, 2013, I reported to the EAP in reference to my return to work scheduled and was presented a typed written agreement between Mr. O'Farrell Hernando and me Habakuk Ndzerre by Ms. Lisa Cooper the EAPs' manager. That was not a proper WMATA's official return to duty. It was another set up from Ms. Lisa Cooper amount other.

**112** – Ms. Lisa Cooper wanted me to sign an agreement with someone who has been abusing me and which I found wrong. The document was a set up so that later it will be filled up with complete false investigation findings to have me fire. A photocopy of the Return to Work Agreement is enclosed herewith as "Exhibit "29."

**113** – Prior to my return to duty on Mai 26, 2013, I met with Ms. Smith, Dayna; Ms. Cooper-Lucas both from EAP; Mr. James Madaras from the Union; Mr. Jerry Flanders Assistant General Superintendent System Maintenance, and Mr. David Newman General Superintendent System Maintenance.

**114** - The meeting was scheduled for my return to duty. The General Superintendent Mr. David Newman presented a verbal apology and requested that I return to work. Mr. James Madaras informed Mr. David Newman that: there are Managers who stated that they will railroad me Habakuk Ndzerre.

**115** - I, Habakuk Ndzerre agreed to return to work and requested a letter of apology; Back pay; return of my vacation; return of my sick leave; return of my seniority. I requested to be compensated for damages. The General Superintendent Mr. David Newman's statement was I cannot make any promise because that is not my domain.

**116** – I, Habakuk Ndzerre stated that EEOC will hold WMATA accountable for pain and suffering, and for punitive damages. My complaint at EEOC will not go to rest until I have been compensated for all the physiological and psychological damages inflicted to my person.

**117** – Upon my return to duty on June 12, 2013; following my complaint to EEOC, I was taken out of U.S. Department of transportation Safety and Security Program classes that are

necessary for my employment development and for the safety and security of the people and infrastructures in the region. A photocopy of the communication regarding this suspension is enclosed herewith as "Exhibit "30.""

118 – I, Habakuk Ndzerre end up paying for these courses out my pocket. The courses were scheduled out of state. I continue to pay and attend the classes on my time which I have been doing. WMATA should not have taken me out of the class because I always attend this class on my vacation time not on WMATA's time. Photocopies of email and classes schedule are enclosed herewith as "Exhibit "31.""

119 – The fact that WMATA did not take any reasonable and practicable steps into my complaints, knowing that there were two forget documents. WMATA's Directorships and Management could have, and should have acted immediately, and taken proactive and preventive measures to ensure that I was not subjected to any further acts of criminal offenses, harassment, discrimination, retaliation or persecution.

120 - I have been exposed for more retaliatory actions and persecutions to the essence of having Ms. Jonita L. Dowling ATC's instructor stated to her students in the classroom that as long she is in charge of the promotional test me Habakuk Ndzerre and Mr. Morad Shahid will never pass the AA test.

121 – Ms. Jonita L. Dowling's statement was reported to me Habakuk Ndzerre in presence of others ATC mechanics crew in the TCR by Mr. Joseph Puckett her former student who said he's not scare of her retaliatory actions. That he found her statement disgusting as an instructor.

122 - I have made many request for promotional test review following the result of April 2014, where my name was not listed such as others mechanics. My request was not granted but others employees request were granted except me Habakuk Ndzerre. Mr. Bune , Henok A. employee number 010260 who received his review and passed from A mechanic to AA mechanic. Photocopies of the result and email are enclosed herewith as "Exhibit "32.""

123 – Furthermore, following the result for the promotional test of November 2014. I made a request for review as others mechanics. My request was not granted but others employees request were granted except me Habakuk Ndzerre. Mr. Sanguenette, Wayne G. employee number 015177 who received his review passed from C to B mechanic. You will find out his name was not on the passing list. A photocopy of the result and email are enclosed herewith as Exhibit "33."

124 - This because the manager in charge of the written test exam Ms. Jonita Dowling decided and made the following statement that: as long she will be in charge of the promotional test neither I, Habakuk Ndzerre nor Mr. Morad Shahid will never make it to AA mechanic as both of

us are A mechanic. I reported this comments to Mr. Carl B. Johnson ATC assistant Superintendent and no actions were taken.

**125** – There are many more retaliatory actions that I may not be able to bring here but I hope you understand the physically and psychologically abuse and persecution I, Habakuk Ndzerre I am exposed too. Some abuses are written up per Mr. Bui Truong's request. A photocopy for medical request is enclosed herewith as "Exhibit "34."

**126** – WMATA's Directorships actions taken against me unto and including my suspension are the results of me being in their blacklist. Because of my national origin WMATA has omitted to act or to prevent further acts of harassment, discrimination in a way to set me up for a failure.

**127** – I have consulter my Doctor and discussed with him the fact that the combination of excessive retaliatory actions and workplace harassment have exacerbated my migraine, triggering my high blood pressure already cause by WMATA's environment. This has meant that I have had to medicate more frequently because I am suffering a breakdown "caused" by chronic depression (disability) arising from excessive intimidation from employer's negligence and breach of statutory duty, and duty of care. In case you may need and update and recent medical report please feel free to ask. A photocopy of my Doctor report is enclosed herewith as "Exhibit "35."

**128** – As a result of WMATA's actions, I, Habakuk Ndzerre suffered physical, psychological and emotional damages by being unlawfully persecuted for an extended period of time up to present. By all of his behavior WMATA's actions towards me Habakuk Ndzerre demonstrated actual malice.

THEREFORE: I, Habakuk Ndzerre respectfully pray; demand judgment against WMATA of $100,000 in compensatory damages and $250,000 in punitive damages, with interest and cost.

I expect and hope that the Equal Employment Opportunity Commission will attend to this matter with the utmost urgency and gravity that it deserves.

I, Habakuk Ndzerre do solemnly declare and affirm under the penalties and perjury that the contents of the complaint on these allegations are true and correct.

Respectfully submitted By I, Habakuk Ndzerre.