# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| HABAKUK NDZERRE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 15-1229 |
| | ) | |
| WASHINGTON METROPOLITAN | ) | |
| AREA TRANSIT AUTHORITY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**FILED**

**MAR 23 2016**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## MEMORADUM OPINION
March 22 2016 [Dkt. #6]

Plaintiff Habakuk Ndzerre ("plaintiff") brings this action, *pro se*, against the Washington Metropolitan Area Transit Authority ("WMATA" or "defendant") and Hernando O'Farrell, in his capacity as a Manager for WMATA, alleging, inter alia, violations of the Family and Medical Leave Act ("FMLA"), Occupational Safety and Health Act ("OSHA"), the National Transit Systems Security Act ("NTSSA"), and Title VII of the Civil Rights Act of 1964 ("Title VII"). *See* Am. Compl. [Dkt. #3]. Before this Court is defendant WMATA's Motion to Dismiss [Dkt. #6] ("Def.'s Mot."). For the following reasons, defendant's motion is GRANTED in part and DENIED in part.[1]

---

[1] This Memorandum Opinion is based on defendant's Motion to Dismiss and Memorandum of Points and Authorities in Support thereof [Dkt. #6]; plaintiff's Memorandum in Opposition thereto [Dkt. #9]; and defendant's Reply [Dkt. #10]. Plaintiff's opposition attaches documents regarding the complaint he filed with the Department of Labor. To date, plaintiff has also filed two Motions for Judicial Notice [Dkts. #8, #11] with numerous attached exhibits. In order to avoid converting the motion to dismiss into one for summary judgment, the Court has only considered the attachments to plaintiff's opposition and has not considered the numerous exhibits attached to plaintiff's motions for judicial notice. *See Williams v.*

## BACKGROUND

Since January 3, 2000, plaintiff, who was born in Cameroon, West Africa, has been employed by WMATA as an automatic train control mechanic. Am. Compl. ¶¶ 4, 9. In his amended complaint, plaintiff recounts a series of actions by WMATA beginning in 2006 that allegedly violate various laws, including alleged acts of discrimination and harassment due to plaintiff's national origin and in retaliation for plaintiff's participation in statutorily protected activities. Am. Compl. ¶ 10.

To begin with, plaintiff believes that on two occasions he was denied his rights under the FMLA. First, in April 2006, plaintiff asserts that despite his request for leave due to the birth of his son and for various illnesses, WMATA management intentionally failed to provide him with the appropriate FMLA paperwork. Am. Compl. ¶¶ 2, 11. As a consequence, plaintiff was forced to use his accrued personal leave. Am. Compl. ¶ 11. Similarly, on or around June 2012, plaintiff requested medical leave to undergo an endoscopy, colonoscopy, and hemorrhoid surgery, yet defendant denied him FMLA benefits and held him back from promotion even though plaintiff submitted the necessary paperwork upon returning to work. Am. Compl. ¶ 13.

Plaintiff also alleges that he was subject to discrimination, harassment, retaliation, and a hostile work environment. He first explains that, in 2011, he was denied a one-step promotion from C Mechanic to B Mechanic despite passing all written and practical tests for that promotion, even though all other mechanics in the same status were promoted.

---

*Chu*, 641 F. Supp. 2d 31, 35 (D.D.C. 2009) (relying on EEOC administrative documents in considering motion to dismiss).

Am. Compl. ¶ 12.  Plaintiff avers that the basis for this decision was discriminatory animus.  Am. Compl. ¶ 12.  Plaintiff then describes an incident in January 2013 in which he was pressured to go along with efforts to justify the prior wrongful demotion of Mildred Wood, a Rail Supervisor.  Am. Compl. ¶ 15.  Specifically, on or about January 7, 2013, plaintiff's immediate supervisor, Hernando O'Farrell, asked him to assist in preparing an incident report for a rail incident that occurred on or about October 22, 2012 that would justify Wood's demotion.  Am. Compl. ¶ 15.  Thereafter, plaintiff was presented with an incident report purportedly containing information from him and bearing his signature, but that he had never seen or signed, and, indeed, did not reflect plaintiff's knowledge of the 2012 rail incident.  Am. Compl. ¶ 15.  Plaintiff reported the apparent forgery to WMATA management and requested an official investigation.  Am. Compl. ¶ 15.  Upon further investigation, O'Farrell stated that he had generated the incident report and used plaintiff's information and electronic signature because plaintiff "did not know how to write English."  Am. Compl. ¶ 15.  Plaintiff asserts that WMATA retaliated against him for his refusal to participate in the production of this fraudulent incident report.  Am. Compl. ¶ 10.

Indeed, plaintiff contends that in February 2013, defendant devised a scheme to generate a "bogus 'failure to comply'" complaint against him.  Am. Compl. ¶ 16.  Specifically, plaintiff alleges that he received a management directive to report immediately to Shift Supervisor Le Tuong Duy's office at a time when he could not comply because he was on scheduled vacation.  Am. Compl. ¶ 16.  Nevertheless, because plaintiff happened to stop by the office to check on an unrelated matter, he became aware

of the directive and reported to the supervisor's office.  Am. Compl. ¶ 16.  There, plaintiff was directed to WMATA's Employee Assistance Program ("EAP") for consultation and evaluation, despite having no performance or behavioral issues in the workplace.  Am. Compl. ¶ 16.  When plaintiff returned from vacation on or about March 14, 2013, he was informed he needed to report back to EAP for reevaluation and received a letter, which he claims did not actually come from EAP, that he was being held off from work by EAP pending completion of a fitness evaluation and assessment.  Am. Compl. ¶ 16.  As a result, plaintiff was not allowed to work for over ninety days pending this assessment.  Am. Compl. ¶ 16.

On June 10, 2013, after making his grievances known to his union and to WMATA's management, plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") regarding defendant's alleged discriminatory conduct.  Am. Compl. ¶ 17.  Thereafter, plaintiff alleges defendant retaliated against him in a variety of ways.  For example, on or about June 12, 2013, plaintiff was taken out of a series of safety and security classes that were necessary for enhancing his work performance in a manner that was humiliating, Am. Compl. ¶ 20; beginning in March 2014, plaintiff was required to perform certain supervisory functions, outside of his regular job description, without being duly compensated for these duties, Am. Compl. ¶ 18; on or about May 2014, plaintiff learned that Jonita Dowling, an Automatic Train Control instructor, stated to her students that as long as she was in charge of administering testing required for job promotions, plaintiff would never pass the testing required to achieve a promotion, Am. Compl. ¶ 19; and on or about April and November

2014, plaintiff was denied review of his test results following promotional testing, Am.

Compl. ¶ 21. On April 30, 2015, plaintiff received notice from the EEOC that his

complaint was being dismissed, Am. Compl. ¶ 22, and on July 30, 2015, he filed this

action, *see* Compl. [Dkt. #1].

## LEGAL STANDARD

**A.    Federal Rule of Civil Procedure 12(b)(1)**

Federal courts are courts of limited jurisdiction, and a court should begin with a

presumption that a case lies outside its jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*

*of Am.*, 511 U.S. 375, 377 (1994). The burden of establishing subject matter jurisdiction

rests upon the party asserting it. *Id.*; *see also Moms Against Mercury v. Food & Drug*

*Admin.*, 483 F.3d 824, 828 (D.C. Cir. 2007). In evaluating a Rule 12(b)(1) motion, the

Court must construe the allegations in the complaint in the light most favorable to the

plaintiff. *See, e.g.*, *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated*

*on other grounds*, 482 U.S. 64 (1987). However, the Court's inquiry is not limited to the

allegations in the complaint. *Id.* Rather, "a court may consider such materials outside the

pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction

to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22

(D.D.C. 2000).

**B.    Federal Rule of Civil Procedure 12(b)(6)**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6),

"a complaint must contain sufficient factual matter, accepted as true, to state a claim to

relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal

quotation marks omitted). "[T]he Court need not accept inferences drawn by plaintiff[] if

such inferences are unsupported by the facts set out in the complaint. Nor must the court

accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI*

*Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). The Court may consider "any

documents either attached to or incorporated in the complaint and matters of which [the

court] may take judicial notice," *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d

621, 624 (D.C. Cir. 1997), as well as documents appended to a motion to dismiss whose

authenticity is not disputed, if they are referred to in the complaint and integral to a claim.

*See Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004). Although *pro se* complaints

are liberally construed, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), the

basic pleading rules must be met. *See Budik v. Dartmouth-Hitchcock Med. Ctr.*, 937 F.

Supp. 2d 5, 11 (D.D.C. 2013).

## ANALYSIS

### A.    Family and Medical Leave Act Claims

Defendant argues that plaintiff's FMLA claims should be dismissed because

WMATA enjoys Eleventh Amendment immunity for violations of the FMLA's self-care

provisions, or, alternatively, because these claims are barred by the applicable statute of

limitations. Def.'s Mem. of P. & A. in Supp. of its Mot. to Dismiss 2 [Dkt. #6] ("Def.'s

Mem."). Because I agree that plaintiff's FMLA claims were untimely filed, I do not

reach the issue of immunity.

The statute of limitations for a private cause of action under the FMLA is two

years after the date of the last event constituting the alleged violation and three years if

the violation was willful.  *See* 29 U.S.C. § 2617(c)(1)-(2).  The alleged violations plaintiff complains of date back to April 2006 and June 2012.  Am. Compl. ¶¶ 11, 13.  Plaintiff, however, did not file this action until July 30, 2015, over three years later.  Thus, even assuming the alleged violations were willful, plaintiff has failed to comply with the applicable statute of limitations.  Plaintiff offers little to rebut this argument, stating only that the statute of limitations on his FMLA claims was "not running out while he was going through all administrative remedies."  Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss 27 [Dkt. #9] ("Pl.'s Opp'n").  District courts have held, however, that because the FMLA does not require the exhaustion of administrative remedies *prior* to filing a civil action, the filing of an EEOC complaint does not toll the statute of limitations applicable to FMLA claims.  *See Redman v. N.Y. State Dep't of Corr. Servs.*, 2011 WL 5119574, at *3 (S.D.N.Y. Oct. 12, 2011); *Fulghen v. Potter*, 2010 WL 4865818, at *3 (E.D. Mich. Nov. 16, 2010).  As such, tolling cannot save plaintiff's FMLA claims, which are dismissed as untimely filed.

## B.  National Transit Systems Security Act Claim

The NTSSA prohibits retaliation against an employee who reports what he reasonably believes is "a violation of any Federal law, rule, or regulation relating to public transportation safety or security."  6 U.S.C. § 1142(a)(1).  The NTSSA does not, however, create a private cause of action for violations of the Act.  Rather, the NTSSA outlines an administrative process for aggrieved employees to file complaints with the Department of Labor (the "Department") and provides jurisdiction to federal district courts in two limited circumstances: (1) to force a person to comply with a final order by

the Department, 6 U.S.C. § 1142(c)(6), and (2) to review a complaint *de novo* when the Department has failed to issue a final decision within 210 days of filing and the delay was not due to the bad faith of the employee, 6 U.S.C. § 1142(c)(7).  This case does not fall into either category.  Plaintiff does not argue that WMATA has failed to comply with a final order by the Department; nor does he suggest that the Department failed to issue, within 210 days, a final decision on a complaint he filed.  It appears that plaintiff filed a complaint with the Occupational Safety and Health Administration ("Administration")— the office within the Department of Labor tasked with receiving NTSSA complaints—on June 6, 2013.  *See* Pl.'s Opp'n Ex. 1, at 43-44.[2]  However, it also appears that the Administration did not sit on this complaint for more than 210 days; rather, on November 19, 2013 it sent plaintiff a notice stating that due to the parties reaching a settlement, the Department was closing the investigation of plaintiff's complaint.  Pl.'s Opp'n Ex. 1, at 45.  As explained, the NTSSA narrowly limits district court review of complaints.  It does not provide for review of cases terminated on the basis of a settlement agreement.  *See* 6 U.S.C. § 1142(c)(3)(A).  Therefore, this Court does not have jurisdiction to hear plaintiff's claims under the NTSSA, and these claims are dismissed.

## C.     Occupational Safety and Health Act Claim

Defendant argues, and plaintiff does not appear to contest, that plaintiff's OSHA claims must be dismissed because OSHA does not provide a private cause of action. Indeed, our Circuit Court has held precisely that.  *See Am. Fed'n of Gov't Emps., AFL-*

---

[2] For citations to this exhibit, the Court refers to the page numbers assigned in the ECF caption for ease of reference.

*CIO v. Rumsfeld*, 321 F.3d 139, 143-45 (D.C. Cir. 2003).  For this reason, plaintiff's

claims under OSHA are dismissed.

**D.      Claims Asserted for the First Time in Plaintiff's Opposition to Defendant's
         Motion to Dismiss**

In his opposition to defendant's motion to dismiss, plaintiff, for the first time,

raises claims under the D.C. Human Rights Act ("DCHRA"), the D.C. Whistleblower

Act ("DCWA"), and the Federal Railroad Safety Act ("FRSA").  Pl.'s Opp'n 28-37.

Defendant argues that these new claims are not properly before this Court and that "any

new allegations must be brought by the Plaintiff in a Motion to Amend the Complaint."

Def.'s Reply 2 [Dkt. #10].  This Court, however, is mindful that *pro se* pleadings are

generally entitled to liberal construction, *see Erickson*, 551 U.S. at 94, and that our

Circuit Court has, in certain circumstances, directed district courts to consider an

opposition of a *pro se* plaintiff as an amendment to an original complaint.  *Richardson v.*

*United States*, 193 F.3d 545, 548-49 (D.C. Cir. 1999).  Heeding these directives, I cannot

agree that the claims first alleged in plaintiff's opposition are necessarily improperly

before the Court.  But even if I accept plaintiff's opposition as a de facto amendment to

his complaint, it cannot save plaintiff's case because I agree with defendant that the new

claims fail as a matter of law.

**1.      D.C. Human Rights Act and D.C. Whistleblower Act Claims**

Defendant argues that because WMATA is an interstate compact agency, it is not

subject to claims under the DCHRA nor the DCWPA.  Def.'s Reply 2.  I agree.

WMATA was established by a compact authorized by Congress and signed by Maryland, Virginia, and the District of Columbia ("the Compact"), and it is an instrumentality of those three separate jurisdictions. Washington Metropolitan Area Transit Regulation Compact, Pub. L. No. 89-774, 80 Stat. 1324 (1966) (codified as amended at D.C. Code § 9-1107.01 (2010)). Under the Compact, WMATA is expressly "exempt from all laws, rules, regulations and orders of the signatories and of the United States otherwise applicable to such transit services and persons, except . . . laws, rules, regulations and orders relating to inspection of equipment and facilities." D.C. Code § 9-1107.01 ¶ 77; *see also OPEIU, Local 2 v. Washington Metro. Area Transit Auth.*, 724 F.2d 133, 139 (D.C. Cir. 1983). Thus, I agree with a number of other district judges who have found that WMATA is *not* subject to these laws. *See, e.g., Taylor v. Washington Metro. Area Transit Auth.*, 109 F. Supp. 2d 11, 18 (D.D.C. 2000) (holding WMATA is not subject to the DCHRA); *Lucero-Nelson v. Washington Metro. Area Transit Auth.*, 1 F. Supp. 2d 1, 7 (D.D.C. 1998) (same); *Sampson v. Washington Metro. Area Transit Auth.*, 2005 WL 3276277 *3 (D.D.C. Aug. 9, 2005) (holding WMATA is not subject to the DCWPA).

### 2.    Federal Railroad Safety Act of 2007 Claim

Plaintiff's new claim under the FRSA fails for the same reasons as his claims under the NTSSA. When it comes to filing complaints for violations under the FRSA, the FRSA has the exact same structure as the NTSSA—that is, a complainant must first file his complaint with the Department of Labor and judicial review in the federal district courts is limited to (1) suits to enforce final orders of the Department, or (2) *de novo*

review of complaints on which the Department has failed to act within 210 days. *See* 49 U.S.C. § 20109(d). Because this case does not fall into either of these categories, plaintiff's claims under the FRSA cannot proceed.

## E.    Title VII Claims

As a preliminary matter, this Court finds that the Title VII claims against defendant Hernando O'Farrell must be dismissed as redundant and an inefficient use of judicial resources. Supervisory employees may only be sued in their official capacity, because employers alone are liable for Title VII violations. *See Gary v. Long*, 59 F.3d 1391, 1399 (D.C. Cir. 1995). As such, a claim against a supervisory employee essentially merges with a claim against an employer, *id.*, and thus it is "redundant and an inefficient use of judicial resources" to name both the employee and the employer in a Title VII claim. *Cooke-Seals v. District of Columbia*, 973 F. Supp. 184, 187 (D.D.C. 1997). Therefore it is within this Court's discretion to dismiss defendant O'Farrell from this action. *See Brown v. Corr. Corp. of Am.*, 603 F. Supp. 2d 73, 78 (D.D.C. 2009) (dismissing Title VII claim against supervisor as redundant).

As to the Title VII claims against defendant WMATA, defendant moves to dismiss plaintiff's claims under Federal Rule 12(b)(6) for failure to state a claim of discrimination, retaliation, or hostile work environment for which relief can be granted. Defendant asserts that plaintiff merely recites "a hodgepodge of events" that he attributes to "discrimination for being from Cameroon, West Africa" but only supported by "conclusory and conjectural[] statements." Def.'s Mem. 4. The Court finds, however,

that the allegations contained in plaintiff's amended complaint, considered in the light most favorable to plaintiff, are indeed sufficient to state a claim under Title VII.

Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2(a)(1), and from retaliating against any employee who opposes unlawful discrimination or participates in an employment discrimination proceeding. *See* 42 U.S.C. §§ 2000e-3(a). In addition, the Supreme Court has held that these provisions of Title VII make it unlawful for an employer to "requir[e] people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).  To adequately plead a viable claim of discrimination under Title VII, a plaintiff must allege that (i) he suffered an adverse employment action (ii) because of his race, color, religion, sex, or national origin. *See Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008).  Similarly, to plead unlawful retaliation, a plaintiff must allege sufficient facts from which it can be reasonably inferred (i) that he engaged in protected activity opposing discrimination; (ii) that he suffered a materially adverse employment action by his employer; and (ii) that "there was a causal link between the protected activity and the adverse action." *Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012).  Finally, to state a claim for hostile work environment, a plaintiff must allege "'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the [plaintiff]'s employment and create an abusive working environment.'" *Baloch*, 550 F.3d at 1201 (quoting *Harris*, 510 U.S. at 21).

In this case, plaintiff proceeds on all three theories—discrimination based on national origin, retaliation for filing a complaint with the EEOC, and hostile work environment.  Although plaintiff's complaint does not allege each of these claims with precision, our Circuit Court has long recognized the ease with which a plaintiff alleging employment discrimination can survive a motion to dismiss under Rule 12(b)(6).  *See Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1115 (D.C. Cir. 2000) ("Because racial discrimination in employment is 'a claim upon which relief can be granted,' . . . 'I was turned down for a job because of my race' is all a complaint has to say to survive a motion to dismiss under Rule 12(b)(6)." (internal quotation marks omitted)); *Rochon v. Gonzales*, 438 F.3d 1211, 1220 (D.C. Cir. 2006) (explaining that "in order to survive a motion to dismiss, all [the] complaint has to say, is 'the Government retaliated against me because I engaged in protected activity.') (internal quotation marks omitted)).

In support of his claim of discrimination based on national origin, plaintiff describes several adverse actions taken against him—including that he was denied a promotion when all other mechanics in the same status were promoted; he was summoned to his supervisors office on a day he was scheduled to be out of the office in order to generate a "failure to comply" complaint against him and subsequently put on leave for ninety days; and he was required to perform additional supervisory functions without compensation when other similarly situated employees were compensated—and ascribes each of these actions to discrimination based on his national origin.  Am. Compl. ¶¶ 12, 16, 18.  Plaintiff also alleges facts to support a claim of retaliation.  For example, he states that the requirement that he perform additional duties without compensation was

also motivated by retaliation for his earlier participation in the EEOC complaint process. Am. Compl. ¶¶ 17, 18.  In support of his hostile work environment claim, plaintiff adds to this list that he was pressured into supporting a fraudulent incident report because his supervisor "perceived that [he] did not know how to write English based on [his] national origin," was removed from necessary safety and security program classes, was denied review of his promotional test results, and a course instructor stated that he would "never . . . advance to the next promotion step."  Am. Compl. ¶¶ 15, 19, 20, 21.

Based on the foregoing, I find that plaintiff's complaint, construed in the light most favorable to him, contains "enough facts to . . . nudge[] [his] claims across the line from conceivable to plausible," which is all that is required at this stage.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Ultimately, plaintiff will have to support his allegations with evidence in the record and show that his national origin or protected activity was the basis for adverse employment actions taken against him.  At this preliminary stage, however, this Court cannot conclude that his Title VII claims against WMATA should be dismissed.

## CONCLUSION

For the foregoing reasons, defendant's Motion to Dismiss is GRANTED in part and DENIED in part.  A separate Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge