# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

HABAKUK NDZERRE, )
         Plaintiff, )
         v. ) Civil Action No. 15-1229
WASHINGTON METROPOLITAN )
AREA TRANSIT AUTHORITY, )
         Defendant. )

**FILED**
AUG 16 2017
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## MEMORANDUM OPINION
August 15, 2017 [Dkt. #32]

Plaintiff, Habakuk Ndzerre ("Ndzerre" or "plaintiff"), brings this action, *pro se*, alleging that defendant, Washington Metropolitan Area Transit Authority ("WMATA" or "defendant"), violated the Family Medical Leave Act ("FMLA"), the D.C. Human Rights Act ("DCHRA"), the D.C. Whistleblower Act ("DCWA"), the Federal Railroad Safety Act ("FRSA"), the Occupational Safety and Health Act ("OSHA"), the National Transit Systems Security Act ("NTSSA"), and Title VII of the Civil Rights Act of 1964 ("Title VII"). Upon defendant's motion, this Court dismissed Ndzerre's NTSSA, DCHRA, OSHA, DCWA, FRSA, and FMLA claims. *See Ndzerre v. Washington Metro. Area Transit Auth.*, 174 F. Supp. 3d 58 (D.D.C. 2016). Only plaintiff's Title VII allegation remains in this case. This matter is now before the Court on defendant's Motion for Summary Judgment [Dkt. # 32]. Upon consideration of the parties' submissions,

1

defendant's motion is GRANTED and plaintiff's case will be DISMISSED with prejudice. All other pending motions are DENIED.[1]

## BACKGROUND

Plaintiff, who was born in Cameroon, has been employed by WMATA as an automatic train control mechanic since January 3, 2000. *See* Def.'s Mot. for Summ. J. ("Def.'s Mot."), Ex. 1, Dep. of Habakuk Ndzerre ("Ndzerre Dep.") at 11:15-17, 12:8-15. In his amended complaint, plaintiff recounts a series of actions by WMATA that allegedly violate Title VII, including alleged acts of discrimination due to plaintiff's national origin and in retaliation for plaintiff's participation in statutorily protected activities. Am. Compl. at ¶¶ 10-22. I briefly set forth the relevant, undisputed facts below.

### A. Plaintiff's Forgery Complaint

The record shows that, on October 22, 2012, an incident occurred at a Metrorail Station at which plaintiff discovered that certain rail switches were either incorrectly switched or failed to be switched at all. Def.'s Mot., Ex. 2, at 2. This error could have caused a major incident, and WMATA policy required that a written report ("Incident Report") be completed. *Id*; Ndzerre Dep. 20:8-11. An Incident Report was accordingly

---

[1] On December 5, 2016, plaintiff moved for this Court to take judicial notice of several documents, including six court records and various documents that allegedly show WMATA's continued retaliation against Ndzerre. *See* Docket No. 27. On January 23, 2017, plaintiff moved to compel responses to interrogatories and production requests with which he believes WMATA has not sufficiently complied. *See* Docket No. 30. This Court has reviewed both motions and has determined that there is no material information contained in the attachments to Ndzerre's motion to take judicial notice that would alter this Court's decision in today's Memorandum Opinion. Plaintiff's motion to compel similarly lacks merit, as defendant has substantially complied with its discovery obligations. Both motions are accordingly DENIED.

2

submitted to Ndzerre's supervisors. Def.'s Mot., Ex. 2 at 2. The report identified Mildred Wood ("Wood") as the offending employee, and as a result of the incident report, Wood was disciplined and demoted. Ndzerre Dep. 19:1-2.

Plaintiff alleges that Wood subsequently came to his home to confront him about his role in the Incident Report. Ndzerre Dep. 21:18-22, 22:1-18. And after Wood visited his home, Ndzerre began to claim that his supervisor, Hernando O'Farrell ("O'Farrell") forged Ndzerre's signature on the Incident Report. Def.'s Mot, Ex. 2. Specifically, plaintiff alleges that he was pressured into supporting a fraudulent Incident Report because O'Farrell "perceived that [Ndzerre] did not know how to write English based on [his] national origin." Am. Compl. ¶¶ 15, 19, 20, 21. To investigate this claim, WMATA's Office of Inspector General ("OIG") conducted an internal investigation and sent a copy of the Incident Report to the United States Secret Service for handwriting analysis. Def.'s Mem. Ex. 2, at 3. The Secret Service concluded that the signature on the Incident Report likely belonged to Ndzerre. *Id.*

**B. Defendant's Failure to Promote Plaintiff**

On November 12, 2012, WMATA denied plaintiff a promotion from a "B Mechanic" to an "A Mechanic." *See* Def.'s Mot., Ex. 3 ("Ndzerre Evaluation"). According to WMATA's evaluation procedures, an employee must have "eight or less occurrences of absence and lost no more than 14 days due to illness in the past 365 days" in order to be eligible for a promotion. *See id.* Plaintiff, however, accrued 27 days of absence in 7 occurrences during the relevant time period, so he was not eligible to be promoted. *Id.*

### C. Plaintiff's Enrollment in an EAP

On January 24, 2013, Ndzerre met with management and mentioned a variety of personal problems, including headaches and high blood pressure that were allegedly caused by WMATA's hazardous working environment. *See* Def.'s Mot., Ex. 4 at 2. ("Referral for Medical Evaluation"). He also expressed concerns that people were out to get him. *See* Def.'s Mot., Ex. 5. As a result, O'Farrell ordered plaintiff to report to WMATA's medical office for an Employee Assistance Program ("EAP") appointment. *Id.* Due to Ndzerre's excessive absence and health complaints, O'Farrell also requested a fitness-for-duty medical evaluation and an excessive absenteeism medical evaluation for plaintiff on January 31, 2013. Def.'s Mot., Ex. 4. On March 15, 2013, O'Farrell referred plaintiff for a second fitness-for-duty medical evaluation based on plaintiff's expressed concerns. *See* Def.'s Mot., Ex. 5. In the meantime, plaintiff took sick leave from work and attended therapy sessions through EAP. *See* Def.'s Mot., Ex. 2. Ndzerre completed his therapy and returned to work on May 28, 2013. *Id.*

### D. Plaintiff's EEOC Charge

On June 10, 2013, Ndzerre filed Charge No. 570-2013-01179 with the D.C. Office of Human Rights and the EEOC, alleging national origin discrimination and retaliation. *See* Def.'s Mot., Ex. 7 ("June 10, 2013 Charge of Discrimination"). Later that month, on June 30, 2013, WMATA promoted plaintiff to the position of "A Mechanic." *See* Def.'s Mot., Ex. 8 ("Settlement Agreement between MWATA & Local 689"). Consistent with an agreement between WMATA and plaintiff's labor union, Ndzerre's promotion date

4

was made retroactive to January 1, 2013, and plaintiff accordingly received 50% of the back wages. *See id.* On August 19, 2013, WMATA also approved plaintiff for paid administrative leave for the period that he was enrolled in EAP pending evaluation. *See* Def.'s Mot. Ex. 9 ("Ndzerre Hourly Employee Payroll Correction"). Accordingly, any sick leave Ndzerre used during that time was restored to him. *Id.*

On December 19, 2013, the EEOC notified WMATA's internal Office of Equal Employment Opportunity and Employee Relations ("OEEO") that Plaintiff filed charge number 570-2013-01179 earlier that year. *See* Def.'s Mot., Ex. 10 ("EEOC Notice of Charge of Discrimination"). WMATA submitted its Position Statement to the EEOC on February 24, 2014. *See* Def.'s Mot., Ex. 3. Plaintiff subsequently received a Right to Sue Letter, dated April 30, 2015, and he commenced the instant action on July 30, 2015. *See* Def.'s Mot., Ex. 2, at 4.

## **STANDARD OF REVIEW**

Summary judgment is proper when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of identifying evidence that demonstrates that there is no genuine issue of material fact. *Catrett*, 477 U.S. at 323. Although the burden is on the movant—here, WMATA—to show that there is no dispute of fact, once this Court determines that WMATA has filed a properly supported summary judgment motion, the burden shifts to Ndzerre to "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *see also*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Importantly, the non-moving party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

## ANALYSIS

Plaintiff's charge of discrimination, which he filed with the EEOC on June 10, 2013, alleges two discrete incidents of national origin discrimination: (1) denial of Ndzerre's promotion on November 12, 2012; and (2) lack of action against O'Farrell after Ndzerre reported that O'Farrell submitted an Incident Report containing plaintiff's forged signature. *See* Def.'s Mem., Ex. 7. Ndzerre's charge of discrimination also alleges one instance of retaliation: plaintiff's suspension from work during his enrollment in EAP. *Id.* I will address each of these claims in turn.

### A. WMATA's Failure to Promote Plaintiff

WMATA insists that Ndzerre's claim that he was denied a promotion because of his national origin must be dismissed because plaintiff failed to exhaust his administrative remedies for that discrete act of discrimination. The law in our Circuit clearly supports WMATA's position. How so?

Our Circuit has held that Title VII "[c]omplainants must timely exhaust the[ir] administrative remedies before bringing their claims to court." *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997); *see also Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010) (same). And Title VII's charge-filing provision specifies that "[a] charge under this section shall be filed within one hundred and eighty days after the alleged unlawful

6

employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). Although in some cases it may be more difficult to identify the discrete unlawful employment practice that triggers the running of the 180-day deadline, the Supreme Court has made clear that "[d]iscrete acts such as . . . failure to promote . . . are easy to identify," and that "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). Here, WMATA denied Ndzerre a promotion from a B Mechanic to an A Mechanic on November 12, 2012. *See* Def.'s Mot., Ex. 3. Thus, to fall within the statutorily prescribed 180-day deadline, plaintiff would have had to file his charge of discrimination on or before May 12, 2013. Unfortunately for plaintiff, he did not file his charge of discrimination with the EEOC until June 10, 2013, nearly a month after the deadline had passed. *See* Def.'s Mot., Ex. 7. Plaintiff's allegation that WMATA violated Title VII by failing to promote him therefore must be dismissed because Ndzerre failed to timely exhaust his administrative remedies as required under the statute.

## B. WMATA's Alleged Failure to Discipline O'Farrell

Next, Ndzerre claims that WMATA's failure to discipline O'Farrell after Ndzerre reported his suspicions of forgery constitutes an adverse employment action against him under Title VII. WMATA asserts that plaintiff's theory of discrimination is fatally flawed because he has failed to allege an actionable adverse employment action adverse to him. Def.'s Mot. at 9. I agree.

To qualify as an adverse employment action, the challenged action must be "a significant change in employment status, such as hiring, firing, failing to promote,

7

reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009). An employee must "experience[] materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm." *Id.* Here, plaintiff has failed to allege *any* act on the part of defendant that could possibly be construed as influencing the status of his employment. Instead, plaintiff claims only that WMATA failed to take disciplinary action against O'Farrell after plaintiff complained that O'Farrell submitted an Incident Report containing plaintiff's forged signature. *See* Def.'s Mot., Ex. 7. But the record is clear that, after plaintiff complained to WMATA's OIG about his signature, the OIG conducted its own investigation of the events and sent the Incident Report to the United States Secret Service for a handwriting analysis. *See* Def.'s Mot., Ex. 2. The analysis concluded that the signature was, in fact, likely plaintiff's, so the OIG closed the investigation. *Id.* Because the third-party investigation revealed that there was no forgery, WMATA did not discipline O'Farrell. Neither the underlying investigation of the forgery allegation, nor WMATA's ultimate determination not to discipline O'Farrell influenced the terms or conditions of plaintiff's employment. Plaintiff's claim accordingly fails as a matter of law.

### C. Plaintiff's Retaliation Claim

In addition to his claim of national origin discrimination, plaintiff also alleges that he was subject to unlawful retaliation for engaging in protected activity. Specifically, Ndzerre avers that he was suspended from employment with WMATA for complaining

8

about his signature being forged on the Incident Report. Am. Compl. at ¶ 16. Unfortunately for plaintiff, however, WMATA's conduct does not amount to an adverse employment action under Title VII.

To establish a prima facie case of retaliation under Title VII, a plaintiff must show (1) he engaged in protected activity; (2) he was subjected to an adverse employment action; and (3) there was a causal link between the protected activity and the adverse action." *Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2006) (internal quotation marks and citations omitted). While this Court has its doubts as to whether plaintiff's complaint concerning his forged signature qualifies as protected activity under Title VII, I need not resolve that issue because plaintiff has clearly failed to demonstrate that he was subjected to an adverse employment action.

Although plaintiff claims in his charge of discrimination that he was suspended from employment on March 14, 2013 because of his forgery complaint, he concedes in his amended complaint that what he characterized as a "suspension" was actually a temporary hold from work by the EAP for a fitness-for-duty examination. *See* Def.'s Mot., Ex. 7; Am. Compl. at ¶ 16. Crucially, WMATA's decision to refer plaintiff to EAP was not a disciplinary action, and it did not alter the terms or conditions of plaintiff's employment. Indeed, while Ndzerre was enrolled in EAP, he continued to receive his normal salary via sick leave. *See* Def.'s Mot., Ex. 9. And on August 19, 2013, Ndzerre's use of sick leave was retroactively converted to administrative leave, which restored his sick leave balance to its pre-EAP status. Def.'s Mot., Ex. 9. Because Ndzerre did not "experience[] materially adverse consequences affecting the terms, conditions, or

9

privileges of employment or future employment opportunities," Ndzerre necessarily cannot show that he suffered an adverse employment action. *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002). This is especially true in light of the fact that plaintiff was promoted to A Mechanic on June 30, 2013, *after* he returned from EAP leave.

Moreover, plaintiff has not cited—and this Court has not found—a single case where a Court has held that referral to an EAP constitutes an adverse employment action. To the contrary, the weight of authority indicates that referral to an EAP does *not* constitute an adverse employment action under Title VII. *See, e.g.*, *Weaver v. City of Twinsburg, Ohio*, 580 Fed. App'x 386, 390-91 (6th Cir. 2014) ("Plaintiff fails to cite any case where a court found that an EAP was an adverse employment action."); *Delia v. Donahoe*, 862 F. Supp. 2d 196, 212 (E.D.N.Y. 2012) ("[P]laintiff's referral on June 1, 1999 to EAP counseling does not constitute an adverse employment action as a matter of law."); *Waters v. Gen. Bd. of Global Ministries*, 769 F. Supp. 2d 545, 558 (S.D.N.Y. 2011) ("[T]he issuance of a performance plan and the recommendation that [plaintiff] attend EAP counseling sessions do not constitute adverse employment actions."). Here, WMATA has proffered uncontroverted evidence that the EAP is a *voluntary* program designed to assist employees with their mental health needs. *See* Def.'s Mem., Ex. 6. Plaintiff has therefore failed to establish the second element of his prima facie case under Title VII, and his retaliation claim accordingly fails.

### D. Plaintiff's Additional Instances of Discrimination

In support of his claim of discrimination based on national origin, plaintiff describes several additional adverse actions taken against him: (1) denial of a promotion

from Mechanic C to Mechanic B in 2011; (2) additional supervisory duties without compensation while other employees were compensated; (3) removal from safety and security classes; (4) denial of review of his promotional test results; (5) stray comments by an instructor that plaintiff would "never . . . advance to the next promotion step"; and (6) a hostile work environment. Am. Compl. ¶¶ 15, 19, 20, 21. All of these allegations, however, must be dismissed because they were not included in plaintiff's June 10, 2013 charge of discrimination.

"Title VII requires that a person complaining of a violation file an administrative charge with the EEOC and allow the agency time to act on the charge. Only after the EEOC has notified the aggrieved person of its decision to dismiss or its inability to bring a civil action within the requisite time period can that person bring a civil action herself." *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995); *see also* 42 U.S.C. § 2000e-5(f)(1) ("[W]ithin ninety days after the giving of [a notice of right to sue] a civil action may be brought against the respondent named in the charge."). And our Circuit has held that a Title VII lawsuit brought after an EEOC charge must be limited only to claims that are "like or reasonably related to the allegations of the charge and growing out of such allegations." *Park*, 71 F.3d at 907. Importantly, "the requirement of some specificity in a charge is not a mere technicality," and "[a] court cannot allow liberal interpretation of an administrative charge to permit a litigant to bypass the Title VII administrative process." *Id.* (internal quotation marks and citations omitted).

Here, there can be no dispute that plaintiff failed to plead the above-mentioned allegations in his June 10, 2013 charge of discrimination. Plaintiff never mentioned a

11

hostile work environment in the charge, nor did he claim a "continuing action." Instead, he claimed only: (1) failure to promote in 2012; (2) failure to take action against O'Farrell for the alleged forgery; and (3) retaliation for complaining about the forgery. *See* Def.'s Mem., Ex. 7. Indeed, Ndzerre's charge of discrimination not only lacks the words "hostile work environment," but also lacks any factual allegations to support such a claim. And the charge of discrimination similarly does not even hint at the additional national origin allegations plaintiff lists in his amended complaint. Our Circuit has instructed that "[t]he goals behind the requirement of prior resort to administrative relief would be frustrated if the filing of a general charge with the EEOC would open up the possibility of judicial challenges to any related conduct that took place in connection with the employment relationship." *Park*, 71 F.3d at 908. And this Court will not frustrate the purposes of the Title VII by allowing Ndzerre to pursue allegations outside the scope of his discrimination charge. Plaintiff's additional allegations of national origin discrimination, retaliation, and hostile work environment are accordingly dismissed.

## CONCLUSION

For the foregoing reasons, defendant's Motion for Summary Judgment is GRANTED and plaintiff's claims are DISMISSED with prejudice. A separate Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge